IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES PRICE, | : | |
| Plaintiff, | : | |
| | : | Case No. 2:07-CV-0933 |
| v. | : | |
| | : | JUDGE ALGENON L. MARBLEY |
| BOARD OF TRUSTEES OF THE INDIANA | : | |
| LABORER'S PENSION FUND, ET AL. | : | Magistrate Judge Kemp |
| | : | |
| Defendant. | : | |

**OPINION AND ORDER**

**I. INTRODUCTION**

This matter is before the Court on Plaintiff James Price's ("Price") Motion for Attorney's Fees pursuant to 29 U.S.C. § 1132(g). For the reasons set forth below, this Court **GRANTS** Plaintiff's motion.

**II. BACKGROUND**

Price is a member of the Indiana State District Counsel of Laborer's Hod Carriers Union and for several years was employed as a laborer. As a benefit of his union membership, Price participated in a multi-employer employee benefit pension benefit plan (the "Plan") established and maintained in accordance with the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S. C. § 1001, et seq. The Plan is administered by the Board of Trustees of the Indiana Laborer's Pension Fund (the "Board"). The Board is also the entity empowered to amend the Plan.

In January 1990, Price was injured during the course or his employment and as a result, on July 1, 1990, he began drawing disability benefits pursuant to the Plan's provision for Total and Permanent Disability Benefits. Price continued to receive such benefits until 2001, at which time the Board denied Price's application because it alleged the medical evidence submitted from his most recent medical examination did not meet the Plan's definition of "permanent and total disability."[1] As an alternative, Price was informed that he could apply for Occupational Disability Benefits.[2] Price applied for Occupational Disability Benefits, was approved for such benefits, and began receiving such benefits on September 1, 2001. Price's Occupational Disability Benefits (the "Benefits") were re-approved in 2002, 2003, 2004, and 2005.

On June 1, 2001, the Board adopted the Sixth Amendment (the "Amendment") to the Plan, which took effect January 1, 2005. Under the prior version of the Plan, § 7A.5 stated:

> The Occupational Disability Benefit shall be payable only during continued Occupational Disability and until Early Retirement Age under section 2.1(n). Once a Participant reaches Early Retirement Age under section 2.1(n), his Occupational Disability Benefit payments shall cease and he shall begin receiving his Early Retirement Benefit upon approval of his application for benefits without any adjustment for Occupational Disability Benefit payments received.

The amended § 7A.5 of the Plan stated:

> Occupational Disability Benefits shall be payable only during a Participant's continued Occupational Disability and . . . effective for Occupational Disability Benefits commencing prior to January 1, 2005, for a period not to exceed

---

[1] To qualify for Total and Permanent Disability benefits, a person must totally and permanently be prevented "from engaging in any regular occupation or employment for remuneration or profit . . ." (Plan § 2.1(bb)).

[2] To qualify for Occupational Disability benefits, a person must totally and permanently be prevented "from engaging in any further employment or gainful pursuit for remuneration or profit . . . within the construction industry." (Plan § 2.1(y-1)).

December 31, 2006, or if earlier, the Participant's attainment of Early Retirement Age under section 2.1(n).

On January 11, 2006, Price was informed that his Benefits would terminate on December 31, 2006. Pursuant to the Amendment, Price stopped receiving his Benefits on January 1, 2007. Price appealed the decision to terminate his Benefits to the Board. The Board denied Price's appeal. On September 14, 2007, Price filed suit in this Court, alleging that the Amendment, as applied to him, violated ERISA.

This Court ruled in its Opinion and Order on Price's Motion for Judgment on the Administrative Record (the "Order") that Price had a vested interest in the Plan under which he had been receiving Benefits. *Price v. Bd. of Trs. of the In. Laborer's Pension Fund*, No. 2:07-CV-0933, 2009 WL 799639, at *4 (S.D. Ohio March 24, 2009). This Court found that the Amendment to the Plan divested Price of his vested interest in the Plan. *Id.* Though this Court acknowledged the right of the Board to amend the Plan, the Board could not divest Price of his vested interest. *Id.* Thus, the Board was prohibited from applying the Amendment to Price in determining his eligibility for the Benefits. *Id.* Price's Motion for Judgment was thereby granted and this Court ordered Price's Benefits be reinstated. *Id.* at *5.

On April 2, 2009, Price filed a Motion to Alter or Amend the Judgment. On July 2, 2009, this Court granted the Motion and ordered Defendants to: (1) pay Benefits that have accrued since January 1, 2007 to the date of judgment in the amount of $10,536.12; (2) pay pre-judgment interest on that sum; and (3) begin paying Price a monthly Benefit in the amount of $501.72 beginning with the month of April 2009, and continuing for so long as Price remains eligible to receive the Benefits. Price now moves the Court for an award of attorney's fees.

### III. STANDARD OF REVIEW

In any action brought by a participant in an ERISA plan, the court "in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). The Sixth Circuit "recognizes no presumption as to whether attorney fees will be awarded." *Foltice v. Guardsman Prods., Inc.*, 98 F.3d 933, 936 (6th Cir. 1996).

To determine whether an award of attorney's fees is justified, courts in the Sixth Circuit use the five-factor test set forth in *Sec'y of Dep't of Labor v. King*, 775 F.2d 666 (6th Cir. 1985):

> (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' positions.

*Id*. at 669. "No single factor is determinative, and thus, the district court must consider each factor before exercising its discretion." *Moon v. Unum Provident Corp.*, 461 F.3d 639, 642-43 (6th Cir. 2006).

## IV. LAW AND ANALYSIS

### A. Attorney's Fees Factors

#### 1. Degree of Culpability or Bad Faith

At the time Price was awarded his Benefits, the Plan language stated, in relevant part, that Benefits were "payable only during continued Occupational Disability and ***until Early Retirement Age***." (Plan § 7A.5, emphasis added). A disability benefit is, in a sense, a "status" benefit. The parties in this case contracted for Benefits upon a person's qualification for disability status. If an employee makes a concession in terms of current wages in the expectation of disability benefits if he becomes disabled, he would want an assurance that once he qualifies for disability status, he would continue to receive such benefits regardless of the bargain reached

in subsequent agreements. Permanently disabled employees are also not active employees, and accordingly, are not usually represented by a union. As such, there is a risk that active employees would bargain away the benefits of disabled employees who are not able to represent themselves. For these reasons, there is an inference that the parties intended the Benefits to continue as long as the beneficiary remains disabled (and had not reached Early Retirement Age).

The Board enacted an Amendment that reduced the time an employee could receive Benefits. Under this Amendment, someone like Price, who was already permanently disabled and was expecting to receive Benefits until he reached early retirement age, had his or her Benefits reduced to a two year period.

The Sixth Circuit has found that "promising to provide a benefit until a person dies undoubtedly means that the benefit lasts for the person's life." *Noe v. Polyone Corp.*, 520 F.3d 548 (6th Cir. 2008). Likewise, in this case, promising to provide a benefit "until Early Retirement Age" undoubtedly means that the benefit lasts until a person reaches that age. *See UAW Local 540 v. Baretz*, 159 F.Supp.2d 961, 966 (E.D. Mich. 2001) (finding that because express language of the plan provided that disability benefits shall continue until the employee's retired date "[o]nce the disabled plaintiffs were entitled to continued disability benefits, [the company] could not modify or terminate those benefits . . ."). Case law is clear that once benefits vest, those benefits may not be unilaterally modified or reduced by the employer. *E.g., Winnett v. Caterpillar, Inc.*, 553 F.3d 1000, 1009 (6th Cir. 2009). Though the Board had a right to amend the Plan, the Board had no discretion to divest Price of his vested interest. Culpability is therefore evident in the Board's termination of the vested Benefits of a permanently disabled employee. As such, this factor weighs in favor of awarding fees.

## 2. Ability to Satisfy an Award of Attorney's Fees

Defendants do not dispute their ability to pay the requested attorney's fees. As such, this factor weighs in favor of awarding fees.

## 3. Deterrent Effect of an Award on Other Persons Under Similar Circumstances

The key question in analyzing this factor is whether the fee award would have a deterrent effect on other plan administrators. *Gaeth v. Hartford Life Ins. Co.,* 538 F.3d 524, 532 (6th Cir. 2008). Even with the inherent deterrent effect that comes with any plaintiff's ruling, there is also something to be said for the heightened deterrent effect resulting from a fee award. This factor is necessarily tied to the first, since this factor "is one that is likely to have more significance in a case where the defendant is highly culpable." *Foltice*, 98 F.3d at 937. In this case, the Board's culpability is patent in that it divested a permanently disabled employee of his vested Benefits. Furthermore, this is not such a unique case that it would not serve as a deterrent to others in similar circumstances. *See Smiljanich v. Gen. Motors Corp.*, 302 F. App'x 443, 452 (6th Cir. 2008). The outcome of this case could well serve as an example to other plan administers who are considering amending their plans to divest permanently disabled employees of their vested benefits. Therefore, this factor weighs in favor of awarding fees.

## 4. Whether the Party Requesting Fees Sought to Confer a Common Benefit or Resolve Significant Legal Questions Regarding ERISA

Price acknowledges that he filed his claim for his own benefit, thus he did not seek to confer a common benefit. Nevertheless, the other consideration for his factor is whether this case resolved any significant legal questions regarding ERISA. The parties' dispute was whether a disability benefit vests upon an employee becoming disabled. This is a legal question that has

only been decided, affirmatively, by one district court in this Circuit, the Eastern District of Michigan in *Baretz*, 159 F.Supp.2d 961, and has not yet been decided by the Sixth Circuit. This is a pressing legal issue that has arisen in other cases across the country. *See, e.g., Gibbs ex rel. Estate of Gibbs v. CIGNA Corp.*, 440 F.3d 571 (2d Cir. 2006). The merits of this case turned on the resolution of a significant ERISA question. *Cf. Gaeth v. Hartford Life Ins. Co.,* 538 F.3d 524, 533 (6th Cir. 2008). Though the reasoning was strong for treating the Benefits in this case as vested benefits, without binding legal precedent, Price certainly took a risk in filing suit. Because this case resolved a significant legal question, which will provide guidance for other employers and confer a benefit on other employees, this factor weighs in favor of awarding fees.

### 5. The Relative Merits of the Parties' Positions

Although Price's position was ultimately meritorious, the analysis does not simply end there. This factor requires the Court to ask which party prevailed "while also asking to what degree did a party prevail." *Elliott v. Metro. Life Ins. Co.*, No. 04-174-DLB, 2007 WL 1558519, at *5 (E.D. Ky. May 29, 2007). Price completely succeeded on his claim and was awarded everything he sought: (1) benefits that had accrued since January 1, 2007 to the date of judgment in the amount of $10,536.12; (2) pre-judgment interest on that sum; and (3) a monthly Benefit in the amount of $501.72 beginning with the month of April 2009 and continuing for so long as Price remains eligible to receive the Benefits. Because Price prevailed on all claims, this factor weighs in favor of awarding attorney's fees.

Therefore, an award of attorney's fees is justified in this case because all factors weigh in favor of Price.

### B. Reasonableness of Fees

The starting point for determining the amount of reasonable attorney's fees is the "lodestar" amount. *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 551 (6th Cir. 2008). This is calculated by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Id.* "Where the party seeking the attorney fees has established that the number of hours and the rate claimed are reasonable, the lodestar is presumed to be the reasonable fee to which counsel is entitled." *Pennsylvania v. Del. Valley Citizens Council for Clean Air*, 478 U.S. 546, 564 (1986).

### 1. Hours Reasonably Expended

In determining the hours reasonably expended by a prevailing party's counsel,

> [t]he question is not whether a party prevailed on a particular motion or whether in hindsight the time expenditure was strictly necessary to obtain the relief requested. Rather, the standard is whether a reasonable attorney would have believed the work to be reasonably expended in pursuit of success at the point in time when the work was performed.

*Woolridge v. Marlene Indus. Corp.*, 898 F.2d 1169, 1173 (6th Cir. 1990). Price submits that 46.3 hours were reasonably expended by his counsel on his case. Defendants have not objected to the hours Price has claimed. After reviewing counsel's billing records, the Court does not find any of these hours to be redundant or excessive; the Court finds them reasonable.

### 2. Reasonable Hourly Rates

Price suggests that a reasonable rate in this case is $300 per hour. Price's counsel's affidavit establishes counsel's work experience in the ERISA field that justifies the rate requested. The affidavit further establishes that the market supports a higher rate than is requested in this case, counsel having worked on another case at a rate of $350 per hour, which both the client and opposing counsel deemed reasonable. Finally, the affidavit sets out a range of

fees that have been approved in this Circuit, ranging from $450 per hour to $250 per hour, based on the complexity of the work and the experience of the attorney. Defendants have not objected to the rate Price has claimed. This Court finds, based on the above cited reasons, that $300 per hour is a reasonable rate. As of the time the Motion for Attorney's Fees was filed, therefore, the total amount of fees incurred was $13,890.00.

## V. CONCLUSION

Price has established that all five factors of the *King* test weigh in favor of awarding him fees. Price has also established that the number of hours and the rate claimed are reasonable. Therefore, Price's Motion for Attorney's Fees is **GRANTED**. Defendants are **ORDERED** to pay Price the requested fees of $13,890.00

**IT IS SO ORDERED.**

<u>**s/Algenon L. Marbley**</u>
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT COURT**

**Dated: September 8, 2009**